# LAMSON v. ANDREWS.

NEGLIGENCE; EVIDENCE; INSTRUCTIONS TO JURY; APPEAL AND ERROR.

1. The admission in an action for personal injuries alleged to have been caused by the use of an insufficient hinge upon a blind, of evidence offered by the defendant, tending to show that the hinge was of standard make and in general use in certain years, is not error, where the plaintiff had shown that the building upon which the blind hung was erected in such years, and had called witnesses to testify that the hinge was deficient, dangerous, and not consistent with good construction, especially where the evidence complained of does not differ materially from other evidence previously introduced by the defendant without objection.

2. The admission of evidence offered by the defendant, tending to show the professional reputation of the architect and builder of a building which was alleged to have been constructed of insufficient materials, to the personal injury of plaintiff, is not prejudicial, where similar evidence had already been introduced without objection, and no motion was made to strike it out.

3. Refusal to give a requested instruction is not error, where the charge to the jury substantially embodies the ideas contained in the instruction asked.

4. Refusal of a special instruction asked by the plaintiff in an action against the owner of a building for personal injuries sustained because of alleged defective construction, to the effect that the defendant could not avoid liability by reason of covenants on the part of the lessee in possession to repair and keep in repair the premises, is not error, where it is clearly apparent from the charge to the jury that the jury fully understood that they were to determine upon the evidence submitted whether the defendant had fulfilled her duty in the premises, and that if they were satisfied she had not, the plaintiff was entitled to recover, irrespective of the lease or the covenant therein.

No. 2493. Submitted May 7, 1913. Decided June 2, 1913.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action brought to recover damages for personal injuries.

*Affirmed.*

The COURT in the opinion stated the facts as follows.

This is an appeal from a judgment upon a verdict for the defendant, Maria F. Andrews, appellee here, in the supreme court of the District in an action for damages for personal injuries suffered by the plaintiff, Mary J. Lamson, on March 28, 1909, while walking along Connecticut avenue in front of the Grafton Hotel, in this city, by being struck by a blind or shutter which was falling from said building.

In her declaration plaintiff sets forth the proximity of the hotel building to Connecticut avenue, its height of six stories, and that upon the outside of its windows are large wooden blinds or shutters; that it "was the duty of the defendant to use due and reasonable care in the erection and maintenance of said building, and in fastening and securing the window blinds or shutters on the outside of said building so that the said blinds or shutters * * * would not fall upon and injure persons lawfully on said highway adjacent thereto;" that the defendant, disregarding her duty in the premises, failed to exercise such reasonable care "in this; that in fastening and affixing a certain blind or shutter upon the side of said building abutting on Connecticut avenue, she used or employed, or allowed or caused to be used or employed, a hinge or hinges of insufficient size, strength, or construction, properly and securely to fasten or affix said blind or shutter to said building." In a count added by amendment it. is averred that after she became the owner of these premises she permitted the *continuance* of the use of the above-described hinge or hinges, and, further, that she used and employed or permitted the continuance of the use and employment of appliances for holding the blind partially open, which latter appliances, it is averred, "when used or employed in conjunction or connection with

said hinges rendered said blinds especially unsafe and danger-
ous," etc.   It thus appears that plaintiff did not complain of
the use of blinds *in such a place,* but rather of the particular
hinge by which those blinds were fastened.

The evidence in behalf of the plaintiff tended to show that
the defendant was the owner of said premises for life, under
the will of her deceased husband, Frank W. Andrews, who
erected the north portion of the building in the year 1893 and
the portion at the corner of Connecticut avenue and De Sales
street in 1898; that the blind which struck the plaintiff, and
all of the many blinds hung at the windows of said building,
were affixed thereto by means of hinges known as Lull & Porter
hinges, which were used in connection with a fastener known
as the Zimmerman fastener; that during the six years defend-
ant had owned the building prior to plaintiff's injury, as many
as twelve of these blinds had fallen to the streets below.   From
what cause, except in one instance, did not appear.   The record
further shows that the plaintiff "called expert witnesses" who
testified that said Lull & Porter hinges, when used with or
without the Zimmerman fastener, were in their opinion,
dangerous appliances for holding blinds to windows on build-
ings located on public streets, as was the Grafton Hotel.   These
witnesses then gave their reasons for their opinion, and con-
cluded that the use of these hinges was not consistent with good
construction.   After showing defendant's title and introducing
in evidence the blind producing the injury, plaintiff rested.

Motion for a directed verdict for the defendant having been
overruled, she called witnesses who gave testimony tending to
prove that the Lull & Porter hinge, as used on said Grafton
Hotel, was not deficient or dangerous in either respect claimed
by the plaintiff as aforesaid, when used either with or without
Zimmerman fasteners; that said hinge was one of the oldest
standard known hinges; that the use of said fastener with said
hinge was an added precaution or device for safety to prevent
blinds from falling; that said hinge was in general use in
1893 and December, 1908, when the defendant leased the
premises for a term of years to a tenant by the name of Mills.

At a later stage evidence was introduced by the defendant tending to show that the architect of the original building, erected in 1893, as aforesaid, was considered a first-class architect; that the builder was a competent builder; and that the architect of the addition in 1898 and the builder were also competent men. Over the objection and exception of the defendant evidence was then introduced tending to show that the use of the Lull & Porter hinge was very general in 1893 and 1898, the court expressing a doubt as to the admissibility of the evidence because of remoteness of time. Evidence was then received, over the objection and exception of the plaintiff, the court again expressing a doubt as to its admissibility, as to the reputation of the architect and builder of the original hotel building.

*Mr. Charles A. Douglas, Mr. Gibbs L. Baker, Mr. Thomas Ruffin,* and *Mr. Hugh H. Obear,* for the appellant:

1. The court erred in admitting evidence introduced by the defendant, showing the extent and generality of the use of Lull & Porter hinges in the years 1893, 1898, and 1903, because the defendant should not be allowed to excuse her use of dangerous and negligent devices for holding blinds by showing the use by others of similar devices. *Weaver* v. *R. Co.* 3 App. D. C. 448; *Grand Trunk R. Co.* v. *Richardson,* 91 U. S. 454; *Colorado Mtg. Co.* v. *Rees,* 21 Colo. 441; *McMahon* v. *McHale,.* 174 Mass. 326; *Campbell* v. *Dearborn,* 175 Mass. 185.

2. The reasonable safety of the hinge in question cannot be proved by proving the good reputation of the architect or builder who provided it, even though his careful habits should be fully proved, which is not the case here. The character of a specific act cannot be proved by proving the habits or character of the actor. *Baldwin* v. *R. Co.* 4 Gray, 333; *McKay* v. *Johnson,* 108 Iowa, 610; *Harriman* v. *Pullman P. C. Co.* 29 C. C. A. 194, 85 Fed. 353; *Brown* v. *R. Co.* 22 Q. B. D. 393; *Towle* v. *P. I. Co.* 98 Cal. 342; *Saussy* v. *R. Co.* 22 Fla. 327; *Hall* v. *Rankin,* 87 Iowa, 261; *Lawrence* v. *Mt. Vernon,* 35 Me.

100; *People* v. *Holmes,* 111 Mich. 364; *Holtzman* v. *Hoy,* 118 Ill. 534; *Clark* v. *Com.* 111 Ky. 443; *Hays* v. *Miller,* 77 Pa. 238.

3. The covenant on the part of the lessee to repair the premises and keep the same in repair cannot affect the liability of the owner to strangers, because:

The terms "make all repairs" or "make all needful repairs" do not mean "to make structural alterations," such as would be necessary to remove the objectionable hinges in the case. 24 Cyc. 1088; *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47; *King* v. *Pedley,* 1 Ad. & El. 822.

4. If the terms here used would embrace structural alterations, and if there were no duty on the owner to enforce the covenant against the lessee, yet that covenant cannot relieve the lessor from liability, or in any way affect her duty toward the plaintiff or other strangers. *Swords* v. *Edgar,* 59 N. Y. 28, 37; Shearm. & Redf. Neg. § 709a; *Isham* v. *Broderick,* 89 Minn. 397; *Ingwersen* v. *Rankin,* 47 N. J. L. 18; Shearm. & Redf. Neg. § 502; *Knauss* v. *Brua,* 107 Pa. 85; *Keeler* v. *Lederer Realty Co.* 26 R. I. 524.

*Mr. George E. Hamilton, Mr. John W. Yerkes,* and *Mr. John J. Hamilton,* for the appellee:

1. The plaintiff having opened up the question of the sufficiency of the hinge in question for the purposes for which it was used on the Grafton Hotel, the defendant had the right to meet that evidence by the proof which was offered. 11 Enc. Ev. 212, and cases cited.

2. The evidence was properly limited and explained by the court in its charge so as not to mislead the jury, and, even if immaterial, was rendered harmless. 16 Cyc. 1114; *Abel* v. *Canal Co.* 128 N. Y. 662.

3. The evidence was competent whether the plaintiff was seeking to recover on the grounds of negligence or nuisance. *Conhocton Co.* v. *R. Co.* 51 N. Y. 573; *Haggerty* v. *Thomson,* 45 Hun, 398; *Crommelin* v. *Cox Co.* 30 Ala. 328; *West* v.

*R. Co.* 71 Ky. 408; *Groff* v. *Ankenbrandt,* 124 Ill. 51; *Sloggy* v. *Dilworth,* 38 Minn. 183; *Rouse* v. *R. Co.* 42 Ill. App. 421; *Woran* v. *Noble,* 41 Hun, 398; *Jaquette* v. *Capital Traction Co.* 34 App. D. C. 44; *Sullivan* v. *Capital Traction Co.* 34 App. D. C. 358.

4. The trial court is not bound to instruct the jury in the language of a prayer or prayers which may be offered by either party, even though they may be correct, but it may reject all prayers and instruct the jury in its own language, explaining fully and fairly and in more detail the application of the principles of law to the facts of the case. *Presbrey* v. *Thomas,* 1 App. D. C. 171; *Gleeson* v. *Virginia Midland R. Co.* 1 App. D. C. 185; *Ryan* v. *Washington & G. R. Co.* 8 App. D. C. 542; *Pickford* v. *Talbott,* 28 App. D. C. 498; *Travers* v. *United States,* 6 App. D. C. 450; *Funk* v. *United States,* 16 App. D. C. 478.

5. The defendant is not liable in damages to the plaintiff because of any dangerous or unsafe condition of the blind in question, resulting from a failure to repair. *Szathmary* v. *Adams,* 166 Mass. 145; *Neas* v. *Lowell,* 193 Mass. 441; *Leonard* v. *Storer,* 115 Mass. 86; *Clifford* v. *Atlantic Cotton Mills,* 146 Mass. 47; *Everett* v. *Foley,* 132 Ill. App. 438; *Gruntlund* v. *Forsman,* 124 Ill. App. 362; *Hirschfield* v. *Alsberg,* 93 N. Y. Supp. 618.

Mr. Justice ROBB delivered the opinion of the Court:

It is first assigned as error that the court admitted evidence offered by the defendant, tending to show "how extensive the use of Lull & Porter hinges was in the years 1893 and 1898." The plaintiff had herself shown the erection of a portion of this building in 1893 and another portion in 1898; that both portions were equipped with blinds having the Lull & Porter hinge. She had called expert witnesses to testify that this hinge was deficient and dangerous, and that its use on outside blinds facing the street was not consistent with good construction. To meet this evidence, the defendant introduced, without

objection, evidence tending to show that the Lull & Porter hinge, "as used on said Grafton Hotel, was not deficient or dangerous in either of the respects claimed by the plaintiff, as aforesaid;" that this hinge was in general use in 1893 and December, 1908, and was one of the oldest standard known hinges. This evidence, as above noted, was introduced without objection, and was fairly responsive to that in behalf of the plaintiff. The idea had been conveyed to the jury by the plaintiff, through her expert witnesses, that the use of this hinge in 1893 and again in 1898 "was not consistent with good construction;" that it was a defective and dangerous hinge in the respects pointed out by the witnesses. Clearly, evidence tending to show that this hinge "was one of the oldest standard known hinges" in general use in 1893 and 1898, when these two portions of the hotel building were erected, had some bearing upon the question whether the use of such a device was consistent with good construction. If it was a standard hinge and in general use, that fact would tend to negative the expert evidence introduced by the plaintiff. All this evidence related to a particular device used in a particular way, and not to a *similar* device used under *similar* conditions. Moreover, inasmuch as the testimony to which the exception specifically relates did not differ materially from that already introduced without objection, it is difficult to perceive wherein the plaintiff was injured.

The second assignment of error relates to the introduction of evidence showing the reputation of the architect and builder of the hotel building in 1893. Evidence as to their reputation had already been introduced without objection, nor was any motion subsequently made to strike out that evidence. We cannot say, therefore, that the plaintiff was injured by evidence to the same effect, subsequently introduced.

The plaintiff requested the court to instruct the jury that "in determining the question whether the blind which fell was sufficiently affixed, and kept sufficiently affixed, such as would be done by a person of ordinary care and prudence, they should take into consideration the height of said fifth story above the

ground, and the proximity of the building to the street;" that the degree of care to be exercised in such a situation may differ from the degree of care to be exercised in affixing and keeping blinds upon lower buildings and buildings more removed from the street. The refusal of the court to grant this instruction is assigned as error. In the course of the charge the court said: "Of course, you are to take into consideration the situation of this building with reference to the street, how far it was from the street, how high it was, and what damage was liable to be done if a blind should fall. You are to consider this question of reasonable care and prudence with respect to the situation exactly as it was there." No jury could fail to understand that the location of this building, its height, and the possible result of the fall of a blind, were elements to be considered in determining the question of reasonable care and prudence. The charge given substantially embodied the ideas contained in the charge proposed.

The last assignment of error is based upon the refusal of the court to grant plaintiff's third prayer, to the effect that the defendant could not relieve herself from liability to the plaintiff for injuries sustained by the plaintiff as the result of the defective hinge, if such they should find it to be, by reason of the covenants in defendant's lease of the premises to Mills, whereby Mills contracted to repair and keep in repair said premises. The court explained to the jury that the defendant was not in the actual possession or control of these premises at the time of the accident, having leased them to Mills for a period of ten years, beginning December 1, 1898. The court then said: "The plaintiff does not seek to recover on the ground that Mrs. Andrews was bound to watch the condition of affairs there from day to day, and to know whether the premises were safe or not, after that lease began on December 1st, 1908. That is not the position the plaintiff takes in law. But the position the plaintiff takes is this: That on December 1st, 1908, when this lease began, the premises were in the same condition with respect to blinds and fastenings and the safety or want of safety in those blinds and fastenings that it was when this acci-

dent happened; and that she leased the house in that unsafe condition, with authority in the tenant to continue that condition, and with the expectation on her part that he would use the property in its then condition so far as the blinds were concerned.

"So that, you see, the question is, what was the condition on the 1st day of December, 1908? What was her duty at that time? What did she know then as to the safety or want of safety of these premises, and what should she have known, as a reasonably prudent owner of the premises, in regard to these matters at that time? . . . When Mrs. Andrews leased this property, which you are to take as the 1st day of December, 1908, it was her duty to exercise the care and prudence of a reasonable person,—a person of ordinary care and prudence in the circumstances,—to see that her building, as it was equipped with blinds, did not constitute a menace to the people passing along the sidewalk." The court, further on in its charge, again stated the measure of defendant's responsibility, and in closing the charge, mentioned that it had come out in the evidence that another action, growing out of the accident, had been brought by the plaintiff, against the tenant. The court then said: "You are not to consider that at all. It has no bearing whatever upon this case. If there is a recovery here, if she recovers her damages here, that case will go for nothing. It has no effect upon this case at all. Whether the action should have been against the tenant or against Mrs. Andrews was a question of law for the court, with which you are not concerned at all. So you will simply dismiss that matter from your mind." It is clearly apparent that the jury fully understood that they were to determine, upon the evidence submitted, whether the defendant had fulfilled her duty in the premises; and that if they were satisfied she had not, the plaintiff was entitled to recover, irrespective of the lease to Mills.

Finding no error in the record, the judgment must be affirmed, with costs.       _Affirmed._

A motion for a rehearing was overruled October 7, 1913.